**Ann ABRAMSON, Plaintiff,**

**and**

**Virgin Islands Telephone Corporation, Intervening Plaintiff,**

**v.**

**GEORGETOWN CONSULTING GROUP, INC.; Virgin Islands Public Services Commission, Defendants,**

**and**

**Virgin Islands Water and Power Authority, Intervening Defendant.**

**Civ. No. 1990–306.**

District Court, Virgin Islands,
D. St. Croix.

March 25, 1991.

George W. Cannon, Ross & Cannon, Frederiksted, St. Croix, Virgin Islands, for plaintiff.

Albert A. Sheen, Hodge & Sheen, St. Croix, Virgin Islands, for intervening plaintiff Vitelco.

Nancy D'Anna, St. John, Virgin Islands, for Jamshad Madan and Georgetown Consulting.

Victor Schneider, Asst. Atty. Gen., Virgin Island Dept. of Justice, St. Thomas, Virgin Islands, for Com'r Delma Hodge.

Maria T. Hodge, St. Thomas, Virgin Islands, for defendant Public Services Com'n.

Samuel Hall, St. Thomas, Virgin Islands, for intervening defendant Water and Power Authority.

Ralda Simmonds, St. Thomas, Virgin Islands, for defendant Dept. of Property and Procurement.

## MEMORANDUM

HUYETT, District Judge, Sitting by Designation.

■ This action raises an issue which is important to the people of the United States Virgin Islands—whether the Virgin Islands Public Services Commission ("PSC") has authority, independent of the Commissioner of Property and Procurement, to procure services of agents to assist PSC in its investigations of public utilities operating within the territory of the United States Virgin Islands. I conclude that it does.

Plaintiff Ann Abramson, in her capacity as a taxpayer of the United States Virgin Islands, brought this action seeking injunctive and declaratory relief against defendants. Plaintiff alleges that the procedure used by defendant PSC, over a period of many years, in appointing agents to aid the PSC in the investigation of public utilities is unlawful because it violates Title 31 of the Virgin Islands Code, which establishes the procurement requirements for most agencies and departments of the Virgin Islands Government. The PSC has appointed defendant Georgetown Consulting Group, Inc. ("Georgetown") as its agent to assist in numerous investigations of public utilities, including intervening plaintiff Virgin Islands Telephone Corporation ("VITELCO") and intervening defendant Virgin Islands Water and Power Authority ("WAPA").[1]

1. VITELCO was granted the right to intervene as a plaintiff pursuant to Rule 24(b)(2) of the

Defendant PSC moved to dismiss and intervening plaintiff VITELCO moved for summary judgment. By order dated March 15, 1991, I granted the PSC's motion to dismiss, which this court has treated as a motion for summary judgment,[2] denied VITELCO's motion for summary judgment, and directed the Clerk to enter judgment in favor of defendants and intervening defendant and against plaintiff and intervening plaintiff. I write now to explain my reasons.

## I. STANDARD OF REVIEW

Summary judgment is appropriate if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Small v. Seldows Stationery,* 617 F.2d 992, 994 (3d Cir.1980). The court does not resolve questions of disputed fact, but simply decides whether there is a genuine issue of fact which must be resolved at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Ettinger v. Johnson,* 556 F.2d 692 (3d Cir.1977). The facts must be viewed in the light most favorable to the non-moving party, and reasonable doubt as to the existence of a genuine issue of material fact is to be resolved against the moving party. *Continental Insurance Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982).

With respect to the pending motions for summary judgment, there are no genuine issues of material fact. Although the parties do disagree as to certain facts, these facts are *not* material and, thus, do *not* prevent determining the summary judgment motions as a matter of law. All pertinent facts have been made part of the record by the parties.

Federal Rules of Civil Procedure, and WAPA was granted the right to intervene as a defendant pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.

2. In support of its motion to dismiss, the PSC presented this court with matters outside the pleadings, and those matters have not been excluded by this court. Therefore, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the PSC's motion to dismiss shall be treated as a motion for summary judgment.

## II. BACKGROUND

The PSC is a state agency created by the legislature to regulate the rates, services, and actions of the public utilities operating within the territory of the United States Virgin Islands. 3 V.I.C. § 273, 30 V.I.C. § 1 *et seq.* The PSC is composed of seven citizens appointed by the Governor of the Virgin Islands and two senators appointed by the Legislature of the Virgin Islands, who serve only in an *ex officio* capacity. 3 V.I.C. § 273(b).

In conjunction with its legislative mandate to regulate public utilities, the PSC is authorized to conduct investigations of the operations of public utilities and, in doing so, has broad investigatory and fact-finding powers. The PSC may appoint by written order, pursuant to section 18 of Title 30, agents to assist in its investigation of a utility. The agents are granted the same investigatory powers as those granted to the PSC by the legislature. The expenses incurred in investigating a public utility are assessed to the utility investigated. 30 V.I.C. § 25. Under long-standing PSC administrative procedure, the PSC has appointed consultants, hearing examiners, court reporters, and other agents necessary to assist the PSC with its investigations of public utilities.

During the past ten years, the PSC has issued a series of orders appointing Georgetown, of which Jamshed K. Madan is a principal, as its agent to assist in numerous investigations of public utilities, including VITELCO. *See* Affidavit of Richard LeLash, President of Georgetown Consulting Group, Inc. Mr. Madan is a recognized expert in the field of public utility regulation.[3]

3. Mr. Madan is a former partner of the accounting firm of Touche Ross & Co., where he held the position of National Director of Regulatory Consulting. Mr. Madan left Touche Ross & Co. to create the Georgetown Consulting Group. Mr. Madan's educational experience includes a B.S. degree in electrical engineering from Massachusetts Institute of Technology ("M.I.T.") and a M.S. degree in management from the Sloan School of Business at M.I.T.

The Department of Property and Procurement is an executive department of the Government of the Virgin Islands, 3 V.I.C. § 211, with general authority over the enforcement of laws relating to government procurement. 3 V.I.C. § 218. Title 31 of the Virgin Islands Code establishes the procurement requirements for most departments and agencies of the Virgin Islands Government. Section 232(1) of Title 31 provides that the Commissioner of Property and Procurement shall "purchase or contract for all supplies, materials, equipment and contractual services, in the manner described in this chapter, required by any and all departments, offices, boards, institutions, and other agencies of the Government of the Virgin Islands, except the Legislature and the Municipal Court." 31 V.I.C. § 232(1). Sections 230–250 of Title 31 establish a set of regulations to which all Virgin Islands government departments and agencies must adhere when purchasing any supplies, materials, equipment or contractual services. The normal procedure is for the Commissioner of Property and Procurement to secure competitive bids. 31 V.I.C. §§ 235–236. Under certain circumstances, however, open market purchases are permitted. 31 V.I.C. § 239. Open market purchases are permitted within twelve statutory exceptions to the public bidding requirement, including the following:

> (4) the purchase or contract is for professional services; provided that such services shall be procured by competitive negotiation, wherever practicable;
>
> . . . .
>
> (8) the purchase or contract is for property or services for which it is impracticable to obtain competition; . . . .

31 V.I.C. § 239(a)(4) & (a)(8). However, open market purchases or negotiated contracts for services made pursuant to these two exceptions "may be made only after a full explanation of the circumstances requiring the purchase or contract have [sic] been filed with the Governor and the Commissioner of Property and Procurement." 31 V.I.C. § 239(b).

The Department of Property and Procurement plays no part in the PSC's appointment process under section 18 of Title 30. *See* Affidavit of Delma Hodge, the Commissioner of Property and Procurement dated January 24, 1990. The PSC selects all of its own agents pursuant to its statutory authority under sections 18 and 25 of Title 30 and does not rely on government procurement officials to solicit bids or competitively negotiate for its agents. The PSC has used this practice of appointing agents for at least seventeen years, *see* Affidavit of PSC's Executive Director, and, during that time, the Department of Property and Procurement has similarly construed its statutory scheme as inapplicable to the PSC's power of appointment. *See* Commissioner of Property and Procurement's Memorandum of Law.

## III. DISCUSSION

Plaintiff Abramson, in her complaint, and intervening plaintiff VITELCO, in its motion for summary judgment, contend that the PSC has acted improperly by contracting directly with Georgetown. They maintain that the services rendered by Georgetown and its subagents are services that, pursuant to sections 236 and 239 of Title 31, must be procured through competitive bids or competitive negotiation and must be reduced to a written contract.

In its motion to dismiss, the PSC asserts that the complaint should be dismissed because: (1) plaintiff lacks standing under section 80 of Title 5 of the Virgin Islands Code to maintain a taxpayer suit; (2) plaintiff and intervening plaintiff are barred from maintaining an action against the PSC under the facts of this case by the doctrines of claim preclusion and issue preclusion; (3) sections 230–250 of Title 31 do not apply to the PSC because the funds expended to pay the PSC's agents are not territorial monies because the particular utility investigated is assessed directly for all costs associated with the particular investigation; (4) the requirement of competitive bidding does not apply because the PSC is given a direct grant of authority by the legislature, under section 18 of Title 30, to appoint agents to assist in investigations of public utilities independent of the Commissioner of Property and Procurement's

jurisdiction; and (5) even if the requirement of competitive bidding applies, the PSC's appointment of Georgetown as its agent is within one of the exceptions to competitive bidding set forth in section 239 of Title 31.

Because I reach the merits of the claims presented by plaintiff and intervening plaintiff and conclude that the PSC's power of appointment under Title 30 is *not* subject to the requirements set forth in sections 236 and 239 of Title 31, I need *not* decide the other issues raised by the PSC. For the limited purpose of deciding the pending motions, I shall assume that plaintiff has standing to bring this lawsuit as a taxpayer pursuant to section 80 of Title 5.[4]

The PSC appoints its agents, including Georgetown, under the express authority conferred by section 18 of Title 30, rather than under the statutory scheme applicable to executive branch procurement in Title 31, and has interpreted its appointment power to be exempt from the requirements set forth in Title 31. The Commissioner of Property and Procurement concurs that section 18 of Title 30 is the proper statutory basis for the PSC's appointment of agents and does not assert jurisdiction over these appointments under Title 31.[5] Therefore, the PSC and the Department of Property and Procurement are in agreement with respect to the relationship between section 18 of Title 30 and sections 236 and 239 of Title 31.

■ The interpretation of a statutory scheme by the administrative agency charged with its enforcement is entitled to great deference. *Equal Employment Opportunity Comm'n v. Associated Dry Goods Corp.*, 449 U.S. 590, 600 n. 17, 101 S.Ct. 817, 823 n. 17, 66 L.Ed.2d 762 (1981); *N.L.R.B. v. Boeing Co.*, 412 U.S. 67, 74–75,

93 S.Ct. 1952, 1956–57, 36 L.Ed.2d 752 (1973); *Westinghouse Elec. Corp. v. United States Nuclear Regulatory Comm'n*, 555 F.2d 82, 91 n. 44 (3d Cir.1977). The Third Circuit Court of Appeals has stated that courts are "obligated to regard as controlling a reasonable, consistently applied administrative interpretation." *Id.* at 91 n. 44 (quoting *Northern Indiana Public Service Co. v. Porter County Chapter of Izaak Walton League of America, Inc.*, 423 U.S. 12, 15, 96 S.Ct. 172, 173–74, 46 L.Ed.2d 156 (1975)).

> [W]here the language of a statute ... is susceptible of two constructions, a long continued and unvarying construction applied by administrative officials is a persuasive influence in determining the judicial construction, and should not be disregarded except for the strongest and most urgent reasons.

*Shapiro v. City of Baltimore*, 230 Md. 199, 186 A.2d 605, 614 (1962). Hence, the interpretations given by the PSC and the Commissioner of Property and Procurement to their respective statutes, in particular section 18 of Title 30 and sections 236 and 239 of Title 31, should be upheld unless their interpretations are unreasonable or there are strong public policy reasons to interpret these statutory sections otherwise.[6] *See, e.g., United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 131, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985).

■ The fact that the PSC's interpretation of section 18 of Title 30 has gone virtually unchallenged in practice over a long period of time is of considerable significance. It is evident that the PSC's interpretation of its power of appointment is long-standing from its decision in Docket No. 277, entitled *In the Matter of the Application of the Virgin Islands Telephone Corporation for a Change in Rates, see*

---

**4.** Section 80 of Title 5 of the Virgin Islands Code, entitled "Taxpayers' suits," provides as follows:

> A taxpayer may maintain an action to restrain illegal or unauthorized acts by a territorial officer or employee, or the wrongful disbursement of territorial funds.

**5.** Sections 236 and 239 of Title 31 apply only to the procurement of goods and services by the

Commissioner of Property and Procurement. 31 V.I.C. § 235.

**6.** Neither plaintiff nor intervening plaintiff has provided this court with any cogent explanation as to why the interpretations given by the PSC and the Commissioner of Property and Procurement to their respective statutes are unreasonable or any public policy reasons for not upholding the agencies' interpretations.

PSC's Memorandum of Law in Support of Motion to Dismiss, Exhibit A at pp. 30–31, as well as by the affidavit of the PSC's Executive Director which states that the statutory interpretation applied by the PSC to its chapter of the Virgin Islands Code has been unvaried for at least seventeen years.

The PSC's decision in Docket No. 277 is a public record, and the Virgin Islands Legislature is presumed to have knowledge of such decisions. *See* 30 V.I. Rules and Regulations §§ 13–14. When a legislature has not amended a statute to express disapproval of a judicial or administrative interpretation of a particular statute, the legislature's inaction has been held to be an endorsement of the agency's interpretation, particularly when that interpretation is long-standing and the legislature has had ample opportunity to amend the statute. *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985). This is especially true when the legislature has amended the subject statutory scheme in other particulars while failing to revise the specific sections at issue. *Young v. Community Nutrition Institute*, 476 U.S. 974, 106 S.Ct. 2360, 90 L.Ed.2d 959 (1986). Since the PSC's 1985 decision in Docket No. 277, the Virgin Islands Legislature has amended both Title 30 and Title 31 numerous times. *See* 30 V.I.C. §§ 25a, 43a; and 31 V.I.C. §§ 236(c), (f) and (g), 236a, 239(a)(2) and (a)(3), and 249. Moreover, in 1988, the Legislature rejected a bill to amend Title 30, which its sponsor stated was intended, in part, to achieve savings in PSC's consultant fees. *See* Bill No. 17–0319. However, the Legislature has never made an effort to express any disagreement with the complementary interpretations given by the PSC and the Department of Property and Procurement to their respective statutes. Therefore, legislative intent to distinguish the PSC's authority to appoint agents from the Commissioner of Property and Procurement's mandate to solicit competitive bids and competitively negotiate for contractual services can be inferred.

Section 41 of Title 30 mandates that the PSC's powers be liberally construed and that "substantial compliance" with Title 30 "shall be sufficient to give effect to all the ... orders, acts, and regulations of the Commission, and they shall not be declared inoperative, illegal or void for any omission of a technical nature." 30 V.I.C. § 41. This section confers "broad authority" on the PSC, including any implied powers that are proper and necessary to effect and carry out its statutory mandate. *Atlantic Tele–Network Co. v. Public Services Comm'n of the Virgin Islands*, 841 F.2d 70, 73 (3d Cir.), *cert. den.*, 488 U.S. 981, 109 S.Ct. 530, 102 L.Ed.2d 562 (1988).

Under section 18 of Title 30, the PSC is expressly authorized "to appoint, by an order in writing, an agent whose duties shall be prescribed in such order." The PSC is empowered by this section to confer upon agents so appointed "every power whatsoever granted ... to the Commission, except the power to issue any order for which a hearing is required."

The PSC's ability to finance such investigations and appointments is expressly set forth in section 25 of Title 30 which provides in pertinent part:

In connection with any proceeding involving a public utility with a net investment of $1,000,000 or more, the expenses of any investigation or proceeding of any nature by the Commission of or concerning any public utility operating in the Virgin Islands, and all expenses of any litigation, including appeals, arising from any such investigation, valuation, revaluation, or proceeding, or from any order or action of the said Commission, *shall be borne by the public utility investigated,* or otherwise affected as a special franchise tax in addition to all other taxes imposed by law.... When any such investigation, or other proceeding is begun the said Commission may call upon the utility in question for the deposit of such reasonable sum or sums as in the opinion of said Commission, it may deem necessary from time to time, until the said proceeding or the litigation arising therefrom is completed, the money so paid to be deposited in the Treasury of the Virgin Islands in a special account to

be maintained and administered by the Commissioner of Finance and to be designated the "Special Public Utility Deposit Account"....

30 V.I.C. § 25 (emphasis added).

Under the provisions of section 273(g)(4) of Title 3, all fees derived from the annual assessment of utilities "shall be deposited into the Public Services Commission revolving account and such fees shall constitute the annual budget of the Commission." 3 V.I.C. § 273(g)(4). Thus, the PSC agents appointed pursuant to section 18 of Title 30 are *not* paid out of the general treasury. Not only is the PSC separately empowered under section 18 of Title 30 to select and appoint its own agents, but it is also separately empowered under section 25 of Title 30 to fund their compensation.

■ It is a fundamental principle of statutory construction that the court must give effect, if possible, to every provision of a statute so that no part will be left inoperative, superfluous, void, or insignificant. *See Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985); *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979); *Bell v. United States,* 754 F.2d 490, 498–99 (3d Cir.1985). If the PSC's express power to appoint agents set forth in section 18 of Title 30 were subject to the requirement that the Commissioner of Property and Procurement solicit competitive bids or competitively negotiate [7] for such positions, then the PSC's power of appointment would be devoid of all meaning because the agents that the Commissioner ultimately selected may not be the agents that the PSC appointed. In other words, if section 18 of Title 30 were subject to the procurement requirements set forth in Title 31, then the Commissioner, not the PSC, would have the final word with respect to the agents employed by the PSC in carrying out its investigations of public utilities.

Therefore, in order to give meaning and significance to the PSC's express grant of power to appoint agents, that power must be construed as exempt from the requirements of a written contract, competitive bidding, and competitive negotiation under sections 236 and 239 of Title 31. To conclude otherwise would leave the PSC's power to appoint agents a nullity.

This construction that the power of appointment under section 18 of Title 30 is *not* subject to the requirements set forth in sections 236 and 239 of Title 31 is fully consistent with and bolstered by the principle of statutory construction that, when two statutes address a single subject and create an apparent conflict, "a specific statute will be given precedence over a more general one, regardless of their temporal sequence." *Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980); *Creque v. Luis,* 803 F.2d 92, 94–95 (3d Cir.1986); *Creque v. Luis,* 616 F.Supp. 843, 845 (D.V.I.1985).

Sections 236 and 239 of Title 31 and section 18 of Title 30 are in apparent conflict. The former sections give the Commissioner of Property and Procurement the power to procure contractual services on behalf of all agencies of the government, except the legislature and municipal court. The latter section gives the PSC, a government agency, the power to procure services necessary to assist it in conducting investigations of public utilities. Consequently, there is an overlap of power between the Commissioner of Property and Procurement and the PSC with respect to procuring services necessary for the PSC to conduct investigations with respect to public utilities.

In *Creque v. Luis,* 616 F.Supp. 843 (D.V.I.1985), Judge O'Brien was asked to decide which of two apparently inconsistent stat-

---

**7.** Under section 239(a)(4) of Title 31, which provides for the procurement of professional services by open market purchase without competitive bids, it is specified that such open market purchases "shall be procured by *competitive negotiation,* wherever practicable." 31 V.I.C. § 239(a)(4) (emphasis added). The regulations of the Department of Property and Procurement specify that the procedure for such competitive negotiation involves a committee for review whose advice is forwarded to the Commissioner of Property and Procurement for ultimate selection of the professional to provide the services. *See* 31 V.I. Rules and Regs. § 239–8.

utes, 30 V.I.C. § 103(a) and 3 V.I.C. § 65a, governs the tenure of board members of the Virgin Islands Water and Power Authority ("WAPA") whose terms have expired, but whose replacements have not yet been confirmed by the Virgin Islands Legislature. Applying the principle of statutory construction that, when two statutes address a single subject and create an apparent conflict, the specific statute will be given precedence over the more general statute, regardless of their temporal sequence, Judge O'Brien concluded that section 103(a) should control the holdover status of WAPA board members because section 103(a) was directed specifically to WAPA board members whose terms had expired, whereas section 65a was a statute applicable to all departments and agencies of the Virgin Islands Government.

In affirming Judge O'Brien's decision, the Third Circuit Court of Appeals not only approved of his conclusion that section 103(a) controls the holdover status of WAPA board members, but it also approved of his application of the rule of construction for analyzing the applicability of general and specific legislation on the same subject. *See Creque v. Luis*, 803 F.2d 92, 94–95 (3d Cir.1986).

 The principle of statutory construction applied in *Creque* is equally applicable to the present case. Both section 18 of Title 30 and sections 236 and 239 of Title 31 pertain to the procurement of services on behalf of a government agency. Section 18 of Title 30 deals with the subject in specific terms because it applies only to a specific agency and only to specific types of services. On the other hand, sections 236 and 239 of Title 31 deal with the sub-ject in general terms because they apply to all agencies of the Government of the Virgin Islands, except the legislature and the municipal court, and to all types of services. As already discussed, there is no way to harmonize these conflicting sections.[8] To make section 18 of Title 30 subject to the requirement of public bidding or competitive negotiation under sections 236 and 239 of Title 31 would leave the PSC's appointment power meaningless. Therefore, applying the rule of construction that, when two statutes are in apparent conflict, a specific statute will be given precedence over a more general one, section 18 of Title 30 takes precedence over sections 236 and 239 of Title 31 and governs the manner and method by which the PSC procures the services of agents for the purpose of making investigations with regard to public utilities.[9]

This conclusion is bolstered by public policy considerations. Unlike the Public Utility Commissions of large states which regularly employ permanent staffs with special expertise, the Virgin Islands PSC has a staff consisting of only an executive director and a secretary. The executive director performs administrative functions but does not advise the PSC on technical matters. Clearly, section 18 of Title 30 was intended to allow the PSC, in the absence of a permanent staff with special expertise, to secure through its appointment power the expert professional assistance it requires in order to conduct investigations of public utilities.

Contracts for professional services are more appropriately entered into based on factors other than price. The scientific knowledge and professional skill of inde-

---

8. Neither plaintiff nor intervening plaintiff has offered this court any convincing explanation to support their insistence that the PSC's power to appoint its own agents under section 18 of Title 30 can be harmonized with the Department of Property and Procurement's power to select professionals to serve as agents through the competitive bidding or competitive negotiation process under sections 236 and 239 of Title 31.

9. Another principle of statutory construction applicable to the present case is the principle that, when two statutes are in apparent conflict and the latter statute does *not* cover the whole sub-ject matter of the earlier one, the latter statute is generally considered an implied exception to the earlier statute. *See Virgin Islands Distributor, Inc. v. Durkee Foods*, 19 V.I. 85, 91 (D.V.I. 1982); *American Home Assurance Co. v. DeFreitas*, 18 V.I. 26, 29 (D.V.I.1980).

Sections 236 and 239 of Title 31 were adopted in 1955, whereas section 18 of Title 30 was adopted a decade later in 1965. Thus, it would also be correct to construe section 18 of Title 30 as an implied exception to sections 236 and 239 of Title 31.

pendent professionals is difficult to quantify. In *General Engineering Corp. v. Virgin Islands Water and Power Authority*, 805 F.2d 88 (3d Cir.1986), one of the issues before the court was whether the Virgin Islands Water and Power Authority ("WAPA") and the Caribbean Energy Company had entered into a contract in violation of WAPA's competitive bidding statute set forth in section 116 of Title 30. In concluding that the contract was valid even though it was secured without public bidding, the court stated:

> The primary purpose of a competitive bidding statute is to protect against fraud, collusion, and favoritism in the issuance of public contracts. There are certain types of public contracts, however, with respect to which competitive bidding might be counterproductive and therefore inappropriate. Contracts for professional services are almost universally recognized to be such an exception to the general rule. The offerors of professional services possess varying degrees of skill, and therefore *the lowest bidder does not necessarily represent the best value for the public.* As one court stated: "The rationale is that the legislature must have intended to leave public bodies free to judge the professional qualifications of those who perform services requiring scientific knowledge and professional skill."

*Id.* at 94–95 (citations omitted) (emphasis added).

The legislature specifically granted to the PSC, pursuant to section 18 of Title 30, the power to appoint agents to assist in its investigations of public utilities. In order to effectively carry out its statutory mandate of regulating public utilities operating within the territory of the United States Virgin Islands, the PSC must be given complete discretion to appoint the agents it deems best qualified to provide assistance in the complicated and technical areas in which the PSC conducts investigations.[10]

The decision to engage a professional also requires a degree of confidence and trust in the professional's ability, loyalty, and integrity. Because the PSC is the entity with whom the appointee will be working, the PSC's judgment as to the appointee's suitability should be decisive.

## IV. CONCLUSION

In light of fundamental principles of statutory construction, public policy considerations, and the deference that must be given to the long-standing and complementary interpretations that the PSC and the Department of Property and Procurement have given to their respective statutes, I conclude that the PSC's power to appoint agents under section 18 of Title 30 is *not* subject to the requirements set forth under Title 31, in particular the requirements for written contracts, competitive bidding, and competitive negotiation under sections 236 and 239. Accordingly, the PSC has lawfully secured, independent of the Commissioner of Property and Procurement, the services of Georgetown pursuant to the PSC's statutory authority to appoint agents under section 18 of Title 30.

---

**10.** Georgetown provides specialized consulting services in the field of public utility regulation. Georgetown has provided consulting services to over twenty different governmental regulatory commissions including the Federal Communications Commission and the Civil Aeronautics Board. The services Georgetown provides are highly technical and involve sophisticated financial analysis of a utilities' costs, revenues, rate of return, and efficiency.